IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TAMICA MUMPHREY, BERNADITA TORREZ, and JOE GILLIS, § § § Plaintiffs, § v. § CIVIL ACTION NO. 3:09-CV-1208-M § CREDIT SOLUTIONS OF AMERICA, § INC. and DOUG VAN ARSDALE, § § Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Dismiss Defendants' Counterclaims [Docket Entry #40]. For the reasons explained below, the Motion to Dismiss is **GRANTED**.[1]

I.   BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant Credit Solutions of America, Inc. ("CSA") is engaged in the business of consumer debt reduction and debt settlement. Plaintiffs Tamica Mumphrey, Bernadita Torrez and Joe Gillis are former employees of CSA who worked as debt consultants at CSA's Dallas, Texas offices.

On June 26, 2009, Mumphrey and Torrez filed a complaint against CSA, alleging that they had been misclassified as exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"), and that they had been improperly terminated in retaliation for their refusal to sign a waiver of their right to file an FLSA action without first obtaining the advice of legal counsel. On July 2, 2009, Gillis joined the action as a co-plaintiff.

---

[1] The Court has previously addressed this precise issue in *Willins v. Credit Solutions of America, Inc.*, Civ. Action No. 3:09-CV-1025-M.

1

On December 15, 2009, CSA filed its Amended Answer, asserting various affirmative defenses and alleging counterclaims against Plaintiffs for overpayments of advance commissions in connection with their employment with CSA.

Plaintiffs move to dismiss CSA's counterclaims as improper in an FLSA action.

## II. ANALYSIS

CSA's debt consultants were paid commissions for selling CSA's services to customers. CSA alleges that such commissions were not fully earned unless and until CSA earned its fees from the customer, and that CSA has a contractual right to adjust those commission payments if customers cancel orders on which CSA has already paid commissions to its employees.[2] In its Amended Answer, CSA contends that Plaintiffs are indebted to CSA for overpayments of these commissions, and asserts counterclaims for breach of contract, unjust enrichment, money had and received, and setoff and recoupment. In effect, CSA seeks to set off pre-payments of allegedly unearned commissions against whatever liability it may incur as a result of any FLSA overtime wage violations. CSA also seeks attorneys' fees and costs.

While set-offs are not categorically inappropriate in FLSA actions, CSA's counterclaims here are barred under the Fifth Circuit's decision in *Brennan v. Heard*,[3] because they would cause Plaintiffs' wages to fall below the statutory minimum requirements for overtime wages.

In *Brennan*, the district court found that the defendant employer wrongfully withheld from its employees sums due under the minimum wage and overtime provisions of the FLSA. However, the district court permitted set-offs against the amount due in back pay for the value of

---

[2] *See* CSA's Amended Answer at 7.
[3] 491 F.2d 1 (5th Cir. 1974), *overruled on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). While overruled on the issue of the meaning of the word "willful" as used in the statute of limitations applicable to civil actions to enforce the FLSA, *Brennan* is still good law cited as precedent by the Fifth Circuit on the issue of permissible setoffs in FLSA actions. *See, e.g., Singer v. City of Waco*, 324 F.3d 813, 828 n.9 (5th Cir. 2003).

goods, including gas and supplies from the company store, furnished by the employer to its employees. As a result of these deductions, the final awards to many of the employees dropped below "the minimum payments required by the Act."[4]

In reversing the district court's allowance of these set-offs, the Fifth Circuit held that "[s]et-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the [FLSA], and are therefore inappropriate in any proceedings brought to enforce the FLSA minimum wage and overtime provisions . . . ."[5]

The Fifth Circuit's later decision in *Singer v. City of Waco* is not the contrary. In *Singer*, employee firefighters successfully sued the City of Waco (the "City") on overtime payment claims under the FLSA. The firefighters worked a regularly recurring schedule of twenty-four hours on duty, followed by forty-eight hours off duty. According to this schedule, the fire fighters would work cycles consisting of 120 hours in one fourteen-day period, 120 hours in the next fourteen-day period, and 96 hours in the third fourteen-day period.[6] Despite the difference in hours worked between these periods, the City paid its firefighters the same salary every two weeks. Under the FLSA, a municipality paying a biweekly salary must pay overtime compensation to its firefighters when they have worked over 106 hours in a fourteen-day period.[7]

In determining the firefighters' overtime pay, the district court found that the City's method of calculating overtime payments resulted in small deficiencies in overtime pay ($6.60) in the work periods in which the firefighters worked 120 hours. However, the City's method resulted in much larger overpayments ($126.20) in the work periods in which the firefighters

---

[4] *Brennan*, 491 F.2d at 3.
[5] *Id.* at 4.
[6] *See Singer*, 324 F.3d at 817.
[7] *See id.* at 818 (citing 29 C.F.R. §§ 553.230(a), 553.201(a)).

worked 96 hours, and were thus not eligible for overtime pay.[8] The court thus offset the overpayments made by the City in the 96-hour work periods against the shortfalls in the 120-hour work periods.

The firefighters contended on appeal that the district court erred in allowing these offsets. The Fifth Circuit upheld the district court, finding that the City had, in essence, prepaid the required overtime payments.[9]

This result is in accordance with *Brennan*, which held that set-offs in FLSA awards must not cause an employee's award to fall below the statutory minimum.[10] It is clear from a contextual reading of *Brennan*, which involved an award of both minimum wages *and* overtime wages, that the Fifth Circuit's concern with the "statutory minimum" under the FLSA encompassed not only the minimum wage, but also the minimum requirements for overtime pay.[11] The firefighters in *Singer* did not receive less overtime wages than they were entitled to under the FLSA because of the set-off; they simply received some of their overtime pay in advance, which compensated them for other pay periods in which they received insufficient overtime pay.

CSA does not assert any sort of prepaid overtime pay, as in *Singer*, as an offset to the minimum amount of overtime pay required under the FLSA; rather, it asserts a completely unrelated counterclaim for allegedly unearned commission payments. Such a counterclaim cannot be countenanced under *Brennan* and is not authorized by *Singer*, and must therefore be dismissed.

---

[8] *Id.* at 826.
[9] *Id.* at 828.
[10] *See id.* at 828 n.9 ("Our decision in *Brennan v. Heard* is not to the contrary.").
[11] *See Brennan*, 491 F.2d at 4 ("The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act. Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions . . . .").

III. <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' Motion to Dismiss Defendants' Counterclaims is **GRANTED**.

**SO ORDERED.**

June 1, 2010.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**